on behalf of the F1, Mr. Frederick Fowler, on behalf of the F3, Mr. Eric J. Bell. I think you gave us the wrong set of briefs. Your Honor's got Fred Fowler on behalf of the people. Do you think people v. Anderson would be the first one? Yes, I think so. That's the question. I've got my briefs. I don't. Does he have a review coming up soon? Mr. Flavin. Yes. Mr. Bell. You gave us the right lawyers. Thanks. You gave us the right lawyers. Mr. Flavin. May I begin? Thank you. May it please the Court, good morning. And good morning, Mr. Bell. My name is Fred Flavin. It's my privilege to be here today representing the people of the state of Illinois. I want to jump right into Hurlburt v. Charles, the case to which this Court directed our attention in anticipation of the oral arguments. And when talking about Hurlburt, I think it's essential to also talk at the same time about people v. Moore. That's the case on which Hurlburt relies so extensively. Both of these cases are policy decisions. And they're policy decisions based upon courts' concerns about how prosecutors view statutory summary suspension hearings ex ante. And what the incentives are for them and what the prosecutors believe are at stake and how that relates to the legislative intent. In Moore, it was a case where the defendant prevailed in a statutory summary suspension hearing. There was a finding that there were no reasonable grounds. The defense then filed a motion to quash and suppress and tried to parlay its success in the motion and the petition for summary suspension by saying collateral estoppel should prevent the people from being able to contest the motion to suppress. Had the defendant been successful with that, that would have determined the ultimate outcome of the entire criminal case. And on appeal, when the Supreme Court got the case, they took a look at it. And they found that, yes, all the elements of collateral estoppel were, in fact, present from the SS to the motion to quash and suppress because it was an issue of probable cause. And in the SS, reasonable grounds and probable cause in a motion to quash and suppress are synonymous. It was the same parties, and there was a final judgment. But the Moore court carved out this exception to collateral estoppel. They were concerned that if the state, when going into an SS, believed that the entire criminal case could be at stake, the state would not be willing to go along with this narrow, limited-in-scope hearing, which is what it was designed to be. Instead, the state would delay. They would want to wait until all evidence was available, all lab reports were available, all witnesses were there. They would not be willing to simply go on police reports, as they are allowed to do. In fact, it would expand the scope as well. They would feel as if they had to try their entire criminal case at the SS to get all the evidence out because so much was at stake. Consequently, Moore says, even though the elements of collateral estoppel are present, we're going to have an exception. And the defense cannot use this against the prosecution. A little bit later comes Herbert, and this is a case where the defendant lost at the statutory summary suspension before it found there were reasonable grounds. Later on, for reasons unknown in the record, the criminal case was dismissed with prejudice, which is a little bit unusual. There's somewhat of a whiff of something improper perhaps going on with the arrest and with the case at that point. The case comes up to the Supreme Court, and I'm going to take a step back. After the criminal case is concluded, the criminal defendant filed a lawsuit against the arresting officer for wrongful prosecution. And one of the elements they had to prove was that the officer had no probable cause for arrest. The now defendant police officer files a motion for summary judgment saying that the plaintiff should be collaterally estopped from relitigating the issue of probable cause because it was already decided at the statutory summary suspension here. This goes up on appeal to the Supreme Court, and the Supreme Court again finds that, yes, all the elements of collateral estoppel are present. The parties are in privity. There's a final judgment, and the issue is identical. But the Hobart Court adopts the Moore exception. And it adopts it because the Hobart Court is concerned that if a prosecutor going into an excess hearing believes that by prevailing they can knock out an entire lawsuit against their arresting officer because that officer will be able to use this in a motion for summary judgment, that that will increase the stakes for the prosecution. And by increasing the stakes, the prosecution is going to want to delay again. The prosecution is going to want to get all the evidence they can because the stakes have changed. And that will defeat the legislative purpose of the excess hearing, which is to have swift, limited scope hearings where a prosecutor would be willing at times to go on just police reports. Now compare that to our case, which is significantly distinct. Should this court decline to extend the Moore exception in this case, saying the prosecution can use collateral estoppel against the defense, that will not change the way prosecutors look at statutory summary suspension hearings. And here's why. Because prosecutors know going into a summary suspension hearing, they believe that if they win, they're already going to win the motion to quash and suppress as well. Wouldn't Hurlburt say the reason why this policy should be applied across the board is because even though those issues or elements of collateral estoppel have been established, that they were done in a cursory way without testimony based upon hearsay, i.e., police reports, and that if the defendant is to be entitled to the right, which apparently the state was entitled to at Moore, which is to have a full and fair hearing, that it meant that the police officer would then have to come in and testify so that the defendant would essentially be put in a position where the trial court was making ultimate rulings on the merits for purposes of res judicata or collateral estoppel, estoppel by verdict, estoppel by judgment. And so they decided that the Supreme Court decided that it wasn't going to impose upon the state for purposes of collateral estoppel the requirement that they bring in police officers to testify on these matters so that collateral estoppel could be applied. So I'm curious as to why you didn't cite the Hurlburt since it mentions Moore 46 times in the opinion and essentially holds that collateral estoppel isn't supposed to be applied in civil proceedings, whereas Moore talks about collateral estoppel shouldn't be applied in criminal proceedings. Now, Moore also talked about criminal proceedings and the idea that the state should not be estopped in criminal proceedings. Hurlburt decided that the defendant or the plaintiff in the malicious prosecution claim shouldn't be estopped through collateral estoppel for the same reasons. You didn't cite the Hurlburt. I'm curious as to why, because it has more similar facts than does Moore. And even though it may be nice to argue that the state is still in a win-win situation if supposedly it can impose collateral estoppel on the defendant by using police reports and hearsay, the Supreme Court doesn't say that it can be done that way. So I'm asking you two questions. First, why didn't you cite the Hurlburt since it was shepherdized and you would have found it if you'd looked? And two, what makes you think that we are allowed to disregard it? Why are we not required to follow it? Hurlburt is a case that I missed in my research, and I apologize for that to the Court. I welcome the opportunity, and I appreciate that I'm allowed to address it here today. I am not asking this Court to disregard Hurlburt, however. Hurlburt stands for the proposition that where the stakes are increased for the prosecution, and this is a policy decision, it is a question of how does the prosecution look at an SS, and it's a case where the Supreme Court wants the state to be willing to proceed on police reports. I think that's what the issue is. It's not a question of – let me take a step back. I think that's what the issue is. Is the state willing to engage in this limited-in-scope, narrow hearing, or are the stakes going to be so increased by the application of collateral estoppel that the state approaches these hearings differently? And I think in this case the state would not do that. I don't think we're in the same position we would be in the Hurlburt case. We're certainly not in the same position we would be in the Moore case. And I think one of the big things that drove both of those decisions was that those were situations in which, should collateral estoppel apply, it would have determined the entire outcome of a subsequent case. It would be outcome determinative. In the Moore case, it would have tied the hands of the prosecution. They couldn't even contest the motion to suppress, and that goes down the road to ultimately the criminal prosecution being decided. In this case, it's entirely different, because even if we win the motion to suppress through collateral estoppel, we still have to prove our case beyond a reasonable doubt. The defendant still has every defense available to him. They can call witnesses or not call witnesses. And it's not allowing this narrow, limited thing, this SS, to determine the entire outcome of a separate case. And that was the same thing in Hurlburt, where you had a case of it was a motion for summary judgment. If the court in that case had allowed collateral estoppel to apply, it would have determined the entire outcome of that civil proceeding. And I think in that case, too, the fact that there was this dismissal of the criminal case with prejudice, there was at least a whiff of something that was amiss, and perhaps that was something that should be brought before a court. I'd also like to point out that what the state's asking the court to do in this case, which is to determine both reasonable grounds and probable cause together, is not something that's unusual for us to ask. I mean, it's not uncommon for the SS and the motion to quash and suppress to be heard together. It may be inadvisable, but it's done on a regular basis, and they're appealed together. It wasn't done in this case. It was not done in this case, that's right. It's also not unusual for them to be done separately, but then consolidated on appeal. And but for the somewhat peculiar procedural history of this case, with the timing of when the motion to quash was filed, about six months after the original petition for a summary suspension, it puts us in a little bit different position procedurally. But ultimately, big picture, when you do the math, what we're asking this court to do is something we ask all the time, which is simply not allow the defendant to get different rulings on an identical issue. And they shouldn't get a different ruling on an identical issue. Is it an identical issue? Yes. Reasonable grounds in a statutory summary suspension and probable cause in a motion to quash and suppress are considered to be synonymous. It is the same issue, whether an officer reasonably believed he could arrest the defendant for a crime. So it is an identical issue. And that's what, in the Moore case, the Supreme Court found that all the elements of collateral estoppel were met, and the reason they're met is because it is an identical issue. Same thing in Hurlburt, where it was probable cause, it was on a civil side, but it is an identical issue. So as far as whether the issue is the same, it certainly is, and I believe the Supreme Court agrees. In this case, you have a civil case, your statutory summary suspension, and then the criminal case. Are your burdens not different? Our burdens are different, ultimately, in the case. However, the issue before the court is simply whether or not there was probable cause, and whether there was probable cause in a motion to quash and suppress in a criminal case, and whether there were reasonable grounds in an SS, that's the identical issue. It's one and the same, and there are cases all the time that decide both of those issues. Off the top of my head in the briefs, there's a case Broder, B-R-O-D-E-U-R, which is exactly that, where the two things were decided together. I think People v. Ware, which is a Supreme Court case, I think also pointed out that it is one and the same issue in both of those cases. I think another important point I want to make about the difference between the positions of the State and the position of the defense with respect to collateral estoppel is, when you look at it from a distance, I can understand how this Court would say, look, the defense isn't allowed to use this against the State. Why should the State be allowed to use this against the defense? It seems like the prevailing party out of a statutory summary suspension hearing should treat them the same. The law says if parties are in the same position, they should be treated the same way. But the truth is that the State and the defense are in materially distinct positions coming out of an SS hearing with regards to asking to apply collateral estoppel. If the defense can use collateral estoppel, effectively they get a windfall. They get to prevent the State in any way from contesting the criminal case. They handcuff them, and that causes great prejudice to the prosecution to be unable to proceed in the criminal case. Conversely, for the prosecution to be able to use collateral estoppel, all it does is allow us to avoid the motion to quash and suppress, which we're probably going to win anyway if we already won the petition for the statutory summary suspension. We still have to prove our case beyond a reasonable doubt. We still have the burden. We still have to put on evidence. We still have to continue to put on witnesses as well. If the defendant wanted to proceed on a summary suspension hearing, would he be entitled to counsel, appointed counsel, if he couldn't afford one? I do not believe the defendant gets a free attorney and a statutory summary suspension, but they do in the criminal case. Because it's a civil matter. That's correct. And the only thing that the defendant would lose in a statutory summary suspension hearing, should he lose, would be lose his driving privileges, correct? That's correct. And if the defendant in a DUI proceeding on a motion to quash and suppress were to lose, what could he lose? He has a lot more to lose than just his driving privileges, doesn't he? In a motion to suppress? Yes. Or a motion to quash. If the defendant loses a motion to quash and suppress, all that happens at the point, we just proceed down the road ultimately to a trial where the state would still have the burden. The defendant doesn't really lose anything. Now, just because a defendant can't get a free attorney at the stage of the statutory summary suspension, a defendant still is entitled to counsel. And in this case, the defendant did have competent counsel, private counsel who represented him as well. Are you attempting to argue that Brovert is wrongly decided and we should decide this case differently? I'm having a hard time understanding that plus the arguments that you've been making, which are something to the effect that estoppel is based upon the difficulties or the downstream effects rather than the elements that are set forth in both Moore and Brovert. So you're making an argument about why estoppel shouldn't apply instead of arguing that the three elements supposedly have or have not been met. And then in the process of suggesting that Moore should apply because the elements have been met, you say that Brovert shouldn't apply because, or maybe I should say Moore should apply to this case even though Brovert suggested it shouldn't be because the three elements exist and the state or the defendant is not being prejudiced by it. When Brovert says the elements really haven't been met because there really hasn't been a full hearing on the merits, the issues were decided that are the same issues, but it was a cursory, truncated proceeding. It wasn't a full-blown trial. It's almost like saying that a problem cause hearing can suffice to establish whether or not estoppel should apply rather than a full trial on the merits. Excuse me, my time is up. May I be allowed to address the questions? First, with respect to whether we're asking this Court to disregard or somehow not continue Hurlburt, absolutely not. That is not what I'm asking this Court to do. The point that I'm trying to make is that Moore and Hurlburt are effectively a two-step process. Step one is an analysis of whether or not the elements of collateral estoppel have been satisfied. And in Moore, which is similar on that, they found that their elements of collateral estoppel are established. Hurlburt, elements of collateral estoppel are established. In this case, so too, elements of collateral estoppel are established. Now, step two in Moore and Hurlburt, it's not an additional element of collateral estoppel. What they're doing is they're carving out an exception. They're saying, yes, collateral estoppel does apply, but we have policy concerns. There's a legislative purpose for the statutory summary suspension to have this limited narrowing scope, swift hearing to address driver's privileges in the 46 days before the SS is going to go into effect. And that needs to be addressed quickly and needs to be dealt with in a very fast manner. And in both those cases, the Court believed that allowing in those situations, driven by those facts, collateral estoppel to apply, it would create such incentives for the prosecution. These are policy decisions. Incentives for the prosecution that it would defeat the ultimate legislative purpose. The prosecution would delay, delay, delay. They would want to drag out the hearing. They'd want to make it bigger and broader and get more evidence because the stakes became so high. And what I'm arguing is that in our case, to apply collateral estoppel, it would not put those same incentives on the prosecution. It would not raise the stakes for the prosecution so much that it would change the way they approach these SSs. It would not defeat that legislative purpose. The state would still be willing to go along with a swift, narrowing scope SS hearing because the stakes are not such that they wouldn't be willing to do so. Any other questions? I have nothing. Thank you. Do I have a chance to make rebuttal? Thank you. Good morning, Mr. Bell. Good morning. Just have a moment here. May it please the Court. Good morning, ladies and gentlemen. Good morning, Mr. Clather. Collateral estoppel should not apply to summary suspension hearings. As Mr. Clather noted, summary suspension hearings are but meant to be by their nature swift and of limited scope. Moore explained how the state would be required to prepare for summary suspension hearings as though they were mini-trials. However, Moore did not limit its scope to apply only to the defense only. It clearly applies to the state as well. And that's found within the Moore decision where they note support to this is noted where it declines to give preclusive effect to the licensed suspension hearings because no injustice would be done to either party. And here's how I think injustice would be done to the accused motorist if the summary suspension bar of collateral estoppel did not also apply to the state. After a motorist is arrested for a DUI offense, they're issued a notice of summary suspension. Forty-six days later, the motorist's driving privileges are suspended. Time cannot be stopped here. Time can't be told here. The court can't tell the time. The state can't tell the time. The defense can't tell the time. And we're talking about a suspension that is either, in most situations, either six months or 12 months long. Now, when a motorist proceeds to a summary suspension hearing, discovery may not be complete at that time. And I'd like to draw your attention to a matter that I'm currently litigating right now in Lake County. I'm representing a young man accused of DUI. Now, prior to being arrested, the police used taser guns on this young man, and they activated them twice. The police reports I got clearly say within them that once the taser guns were activated, a video camera came on. I've litigated already the SS hearing, and I did not prevail on that hearing. But at this time, as I stand here, I still have not received those videotapes. Now, I've been promised that they're forthcoming, and I don't think there's any sort of ill will or I don't think there's any sort of ‑‑ Also, it's a nice antidote, but I don't know that it's a record, so it really ‑‑ Well, I guess I'm just trying to lay out a situation, because in that situation, I personally ‑‑ Why don't we call this a hypothetical? That's fine. He's trying the facts out on us first. We're going to have to recuse ourselves. But the point is, I don't have the video recordings yet. And if the video happens to show significant impeachment or happens to describe an entirely different situation of the arrest, should I be barred from presenting a motion to quash arrest and suppress evidence? You know, we're talking about a constitutional challenge of the arrest of an Illinois citizen, and I don't think a potential constitutional challenge should be barred by the outcome of the license suspension proceedings. Well, what is your response to what your opponent states about the burden of proof at summary suspension and at the motion to quash or suppress? He says they're the same. Well, I would agree with that. I think that's been long decided because one is reasonable grounds and the other is probable cause. And I think there is case law that says that those are similar. Then what's the distinction? Between the two? There is a distinction. You kind of touched upon it, and so did Mr. Flather during his oral argument. I think the distinction between probable cause and reasonable grounds? No, the distinction as to why they are somewhat different. They're the same burdens, but they're based upon different evidence. In our case, I think there can be situations where they're different evidence. Is that what you're? What I'm suggesting to you is that if we could quantify burden of proof, if you put them on a mass or a weight determiner, they would both weigh 50 pounds, where one might be of feathers and the other might be of rocks. Now, in some proceedings, rocks are inadmissible. In other proceedings, feathers are admissible. It's called testimony versus hearsay. Correct. They're both, according to the statutes and the case law, they're both capable of amassing or weighing 50 pounds. It just is, depending on which statute or which case proceeding you're dealing with, you may not be able to use feathers in a case where rocks are the only provision and vice versa. So talking about the burden or talking about whether it's a heavy 50 or a light 50 doesn't really make too much difference. When we're talking about, as a side point, which is heavier, gold or feathers? I think they weigh, obviously, more. No, they don't. Feathers weigh more because they are weighed under the Ava DuPont system, which is 16 ounces. Gold is weighed under Troy, which is 14 ounces. So a pound of feathers actually weighs more than a pound of gold. So here's a situation where, again, using hypothecation, we're establishing, even though the burdens may be different and the definition of what a pound is may be the same, depending on what you are weighing will give you a different result.  So, well, I guess what I'm trying to lay out is how I think the – and, again, the Morton case certainly talks about it from the State's point of view, I would agree with, but I'm just trying to lay out some scenarios where I think it applies to the Motors. What do you think the holding in Earlburg was? Well, I think the – basically, I think to summarize it, I think it's collateral estoppel doesn't apply to summary suspension proceedings because it's meant to be a limited – a hearing of limited scope, and it shouldn't bar. And parties shouldn't have to prepare for it as though it could be barred by future litigation. So I think it's – Let me ask you a question about that. If you do have a hearing where the defendant subpoenas the arrest – let's say there's only one police officer who's a witness. The defendant subpoenas that police officer to the statutory suspension hearing has a full and complete opportunity to litigate everything at that hearing, other than guilt, but anything related to probable cause. So both sides have a complete hearing on the issue – a full and complete hearing on the issue of probable cause. Does the collateral estoppel apply? Well, I don't mean to correct you, but I think you probably meant reasonable grounds, correct? Right. I think certainly if Mr. Flather had made that argument, that would be a stronger argument than it's not applying, that it shouldn't just apply to the State. But I think in a situation like that where you have a full and fair hearing and where this may be the only witness, I think that would be reasonable. However, as the Moore case decided, they did not want to do a case-by-case – do this on a case-by-case basis. I think they wanted to have some sort of bright-line rule and say, this doesn't apply to summary suspension hearings. Because of the nature of the statutory summary suspension hearing, and that it would obviously give the State – it would undermine the nature of those hearings, and it would give the State the incentive to call witnesses and so forth. But if you don't have that incentive in the reverse situation, is it – well, does collateral estoppel apply? Well, I think – and maybe I'm getting on a different tangent here, but I think although the State can proceed on paper alone, as they say, just without live witnesses, usually they don't do so well at those hearings as opposed to having the officer there. And if it's a situation where it's the officer is the only one testifying and it's a situation where that's going to be the only witness, again, I would – I think that would be an okay – I think that's a result I can live with. And I don't know if I answered your question. I'm not understanding. So if the defendant files a statutory summary suspension, and then as in this – and it's denied, and then as in this case three months later he files a motion to quash and suppress, that collateral estoppel should apply in that situation? Well, in mine it wasn't. Obviously it wasn't. I don't understand. You only have one police officer. The police officer, as Justice Spence asked, applied at the summary suspension hearing. Three months later he filed a motion to quash or suppress. Should collateral estoppel apply? Is that what you're saying? Are you saying in that situation I can live with that? Well, I think what I can live with is if – because, again, I agree that reasonable grounds and probable cause are the same. And if we have a – if it's a situation where at a summary suspension hearing and also on a motion to quash where you only anticipate calling one witness and that witness would suffice for both of those, I think collateral estoppel may be appropriate under those circumstances. Okay. Let's assume you anticipate calling one witness. Are you anticipating calling one witness because under the statute this is the only person who would be allowed to testify, or is this ultimately and altruistically the only witness who would be there and who could testify about anything? Because in, I believe, Hurlburt, the question wasn't just probable cause. There were other issues raised. Correct. And other witnesses may have testified. So the question isn't just whether or not the cop was subpoenaed and testified. The question is whether or not all the possible witnesses who would come in and testify would be allowed to testify fully and completely relative to whether or not the issues, if there was an objection raised as to whether it was relevant and material to the statutory proceeding, might result in an objection being sustained and the witness wouldn't be allowed to testify about something that supposedly is now going to be collaterally estopped because it isn't germane to the statutory suspension hearing. Was that a question? Well, it was a hypothetical question. I think, and I think because, you know, I think that Jesse White states that there's 40,000 DUI arrests a year. Can we believe him? There's a lot of DUI arrests. I think we're all on the same page there. There's all sorts of scenarios that could occur, and I think that's why, in the Moore case, they didn't want to do a case-by-case analysis. I think they wanted to state a bright-line rule. But you're suggesting that you think it should be a case-by-case analysis. No, I'm not. I was posed a hypothetical by Justice Spence. But in that hypothetical Justice Spence laid out, you indicated, sure, I could live with that. And then you were asked another question that was thrown a lot of different factors in there. But going back to the initial question by Judge Spence, you said you could live with that. You had the same police officer, the only witness that saw anything, the only witness that can testify, testifies it's under suspension, then testifies it's a motion, quashes the press. Only witness. Correct. You think collateral estoppel would be appropriate in that case? I think there could be, I guess, a car play exception to the exception. It would be a case-by-case analysis, correct? Correct. But there are also DUI cases where you do have civilian witnesses. Oftentimes the motorist is stopped and he or she has passengers in the car. Sure, I understand that. That's what Judge Justice McLaren was asking you about. And I guess to get to what Justice McLaren had mentioned, one of the prejudices to the motorist in a situation is the time frame I had talked about. 46 days later, they're suspended. There's no statutory way to stop that. There's no mechanism. And obviously the motorist is motivated to have an expedited hearing because it's dealing with the suspension of your license. And in our mobile society, you need to be able to get around and drive around. And obviously they don't want to delay the proceeding because in the meantime they can't drive. While if they have a full, if they address the issue at the hearing, then there's a chance that the petition could be granted. And that's related to the prejudice that the motorist would suffer in these situations. Did you want to address the merits that collateral estoppel was attempting to preclude? Well, I think the merits of the current situation, I think in this situation concerning the present facts, and I think it's significant because the motion to quash the rest of the suppressed hearing is not subject to the limitations of a swift or limited scope hearing. And here the state chose to present less evidence of Mr. Anderson's alleged intoxication than at the summary suspension hearing. No evidence was presented at the motion to quash that Mr. Anderson had driven the vehicle radically or taken a turn widely and struck the curb. Similarly, the officer didn't state his eyes were glassy like he had at the earlier hearing. And in fact, at the hearing on the motion to quash the rest, the circumstances of the car becoming disabled were explained and the explanation made sense. If a car strikes a curb, the car appears okay, but for some damage to the wheel, it certainly seems in my mind to be confused as to why the car would stop running in those circumstances. I've struck curbs before, and my car has never been disabled. Okay. Any other questions? But at that time that you struck a curb and your car wasn't disabled, were your pants wet? Not that I agree. Did you tell the police officer that you were drunk and that you refused to take philosophy tests and you declined a breath test and that maybe you drank too much? I did, and unfortunately I've never been in that situation. Is it possible that you might be? Hypothetically? No. Well, I'm glad to see you're so assertive about at least one thing. Thank you for your time. Thank you. Mr. Flather. Mr. Flather, your worthy opponent makes one really good point about the discovery. You have a motion, the summary suspension that has to be held within a short period of time. As a prosecutor, you know that you don't always have your discovery completed within that first 30, 45-day period. How is it that it's fair and just to the defendant that he is not going to be proceeding at a summary suspension hearing with full discovery? Here's why. Because it's completely within the control of the defendant if and when there's a hearing on the statutory summary suspension. But isn't the intent of the legislature that that hearing be swift? It is the intent of the legislature. And I can tell you in practice the way this works, typically we have the reports in the video the first day up. Our courtrooms are equipped with TV screens. Yours are? In what county? We're in DuPage County. Okay, how about Ogle County or how about Lee or how about Lake? It may be different, but what I will say is this. It's not uncommon. If we don't have the video, the defendant will typically ask for a week date or a two-week date, still before the 46th day when it goes into effect, but they can ask for time. And we'll be ordered by the court to make sure we get them all the discovery. And they can ask for that order from the court exactly for that purpose. It's the defendant who decides when and if there's going to be a statutory summary suspension hearing. And they can wait for that video to come in, and they can see it before that 46th day. If they don't, I would think they would have some due process arguments they could make before the court about their ability even to proceed on the SS at that point, and they might be able to win a rescission on that. If they did, would it, according to Moore, actually result in solving the problem of the violation of their constitutional rights insofar as the prosecution per DUI is concerned? I'm not sure I understand the question. Well, let's assume that the videos aren't made available, and the trial court, based upon that, determines that there should be a summary suspension. But under Moore, for purposes of prosecution, you can still prosecute them for DUI. Yes, that's right. I did want to just take a moment to address the merits as well. I mean, should this court have qualms about the collateral estoppel issue, Justice Shostak, as you pointed out, the defendant caused a one-car crash. His pants were wet. He swayed. He was asked too much. He had to drink. He said too much. He was asked to do fields. He said, why? I'm drunk. He was asked to do fields again. He said, you know I'm drunk. I mean, I think on the merits, this is cut and dry at that point. Three admissions are more than sufficient, especially when you combine it with the corroborating evidence. And finally, I would like to just address, Justice McClaren, you asked about the holding in Hurlburt. And I would direct the court in that hearing, 238 Illinois Seconds. This is at 259 to 260, which is where I think at the end of 259, the top of 260, where the court gets at the gist of their ruling and their reasoning for it. And it reads, rather the holding, this is referring to Moore, was based on the likelihood that the state, given the possibility that the results of the statutory summary suspension hearing would be given preclusive effect, would be less likely to simply rely on police reports as evidence, but instead would elect to call witnesses and conduct full, long hearings. And it goes on to say, such concerns are no less valid with respect to civil litigation. I think what drives these decisions is the concern about how the state views SS hearings ex ante. Counsel, that's called a ratio dissidenti. That is not the holding. The rationale of the case is the collateral estoppel will not apply in civil proceedings. And then it spends the rest of its time explaining why. And you just read the explanation, which is called the ratio dissidenti. That's very right. Okay. So when I asked him what the holding was, I wanted to hear what the holding was. I know what the rationale is. Okay. Now, the point is, is that I can agree or disagree with the rationale. But I can't disagree with the holding. I can't go against the holding. Okay. I think that's right, Your Honor. And my point, though, is the reason I think we're distinct here is that the reasoning behind the Probert decision, I don't think applies in this case because I don't think it changes the way a state is going to look at an SS hearing. It doesn't raise the stakes for us. It doesn't put us in a position where we have to do those full-blown hearings because it just doesn't. If there are no more questions, thank you very much. Thank you. We'll take the case under advisement. It will be a short recess. There's at least one other case in the hall.